# IN THE COURT OF APPEALS OF IOWA

No. 21-1290
Filed May 11, 2022

**IN THE INTEREST OF Z.R.,**
**Minor Child,**

**K.S., Mother,**
         Appellant.
_____


         Appeal from the Iowa District Court for Lee (South) County, Clinton R.
Boddicker, District Associate Judge.


         A mother appeals the termination of her parental rights to her child.
**AFFIRMED.**


         Edward G. Harvey, Fairfield, for appellant mother.

         Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant
Attorney General, for appellee State.

         Kendra Abfalter of State Public Defender's Office, Burlington, attorney and
guardian ad litem for minor child.


         Considered by Vaitheswaran, P.J., and Tabor and Badding, JJ.

**BADDING, Judge.**

A mother who is in the depths of an addiction to methamphetamine appeals the termination of her parental rights to her child, born in 2018, under Iowa Code section 232.116(1)(h) (2021).[1] We affirm.

## I.      Background Facts and Proceedings

This twenty-seven-year-old mother has a long history of trauma and substance abuse.  She began using marijuana at age thirteen, and then methamphetamine at age nineteen.  The Iowa Department of Human Services became involved with the family in May 2020 when it was reported that the mother and her boyfriend were using drugs and alcohol while caring for the child.  The mother and child were living in a hotel with the boyfriend, who also has issues with drugs and alcohol.  The mother was found passed out in bed with the child present. She later tested positive for amphetamines, methamphetamine, and THC.  The child tested positive for the latter two substances.  The State sought and obtained an order for temporary removal, which was confirmed following a formal removal hearing.  The child was adjudicated in need of assistance under Iowa Code section 232.2(6)(b), (n), (o), and (p) (2020).

In June, the mother obtained housing for a short time and underwent a substance-abuse evaluation.  Although the evaluation recommended extended outpatient treatment, the mother decided to enter inpatient treatment in August. While there, she had the child in her care every other week.  She graduated from the program in mid-October and went to live with her boyfriend's mother.  But by

---

[1] The child's father is deceased.

the end of October—and just before a visit with her child—the mother relapsed on alcohol. The visit was canceled, and the mother refused to comply with a sweat patch test. Her boyfriend's mother kicked her out of the house a few days later. A caseworker from the department encouraged her to go to a sober living house; the mother instead moved in with her grandfather, who also used methamphetamine.

At the end of November, the mother tested positive for methamphetamine and stopped attending substance-abuse treatment. Around the same time, the mother became pregnant with a second child. She completed a negative urinalysis in early January 2021, but the testing lab reported signs that her sample was tampered with. The same day as the tampered drug screen, the mother refused a hair-stat test. In late January, the mother tested positive for methamphetamine through her substance-abuse provider. The mother admitted to her counselor that she had been using the substance with her boyfriend. As a result, the counselor recommended that the mother return to inpatient treatment. In late January, the State initiated termination proceedings.

The mother's life became even more chaotic in February when she was pulled over in Illinois for a traffic violation and charged with possession of methamphetamine. In March, Illinois probation and parole personnel reported that the mother arrived to a pretrial appointment under the influence of alcohol and methamphetamine. The mother submitted to a drug test, which was positive for methamphetamine. She was arrested and held in jail in Illinois for several weeks. To avoid more jail time, the mother agreed to go to inpatient treatment again. But she arrived at treatment several hours late and under the influence of alcohol. The mother completed the program toward the end of April. She was again

encouraged to go to a sober living house upon leaving treatment. Instead, she decided to stay with her boyfriend and live out of their car and hotels.

The first day of the permanency and termination hearing started about a week after the mother was released from her second inpatient program. At the hearing, the mother touted her recent completion of treatment, attendance at group substance-abuse meetings, and negative drug screens through her prenatal appointments. Yet she testified that she intended to continue what providers called her "co-dependent" relationship with her boyfriend—one where if he used drugs, she did too. She was hopeful his mother would buy them a house to live in and asked for permanency to be deferred for six months so that she could secure this house. By the second day of the hearing in May, the mother had come up with a new plan to secure housing through the Salvation Army in Illinois, which had helped them find a hotel room to live in temporarily. She agreed that living situation was not suitable for the child. But other than remedying her lack of appropriate housing, the mother did not believe she needed to accomplish anything else in order to have the child returned to her care.

Ultimately, the juvenile court found the child could not be returned to the mother's care because of her "lack of safe and stable housing, her serious, long-standing and ongoing addiction to methamphetamine and alcohol, and her turbulent and violent relationship with" her boyfriend. The court accordingly terminated the mother's parental rights under Iowa Code section 223.116(1)(h) (2021). The mother appeals, challenging the sufficiency of the evidence supporting the ground for termination. She also argues termination is contrary to

the child's best interests, highlights the strength of the parent-child bond, and requests more time to work toward reunification.[2]

## II. Analysis

We apply a three-step analysis in conducting our de novo review of terminations of parental rights, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022) (noting that in conducting our de novo review, we "give weight to the [court's] factual findings but are not bound by them"); *see also* Iowa Code § 232.116(1)–(3). If all three steps support termination, we consider the ancillary issue of whether a parent should be granted additional time. *See* Iowa Code § 232.117(5); *see also id.* § 232.104(2)(b).

### A. Ground for Termination

As to the statutory ground for termination, the mother only appears to challenge the State's establishment of the final element—that the child could not

---

[2] The mother also passively suggests she was not provided reasonable efforts at reunification, but she does not offer an opinion on what additional services should have been provided. In any event, our review of the record discloses this complaint is being raised for the first time on appeal. Thus, error was not preserved. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

In the same vein, the mother states her general disagreement with a number of the district court's findings of fact and conclusions of law. We confine our consideration to the claims for which she provides a minimally sufficient argument to facilitate our review. *See* Iowa Rs. App. P. 6.201(1)(d) ("The petition on appeal shall substantially comply with form 5 in rule 6.1401."); 6.1401–Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why. . . . *General conclusions, such as 'the trial court's ruling is not supported by law or the facts' are not acceptable.*"); *see also In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("A broad, all encompassing argument is insufficient to identify error in cases of de novo review.").

be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring "clear and convincing evidence that the child cannot be returned to the custody of the child's parents . . . at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). On this point, the mother argues there was "no evidence that the child was ever harmed in [her] care" and the "State failed to provide clear and convincing evidence that the child . . . would suffer imminent harm or be in danger if placed with [her]." She also points out she "has been engaged in substance abuse treatment," while acknowledging her addiction will be an ongoing issue.

To establish the challenged element, the State was only required to prove that the child could not safely be returned to the mother's care at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014). At the second day of the termination hearing, the mother agreed the child could not yet be returned to her care due to her housing instability. The mother's concession "amounts to clear and convincing evidence that the child[] could not be returned to her care at the time of the termination hearing." *In re A.A.*, No. 21-1972, 2022 WL 946503, at *3 (Iowa Ct. App. Mar. 30, 2022). Concession aside, the remaining record supports the court's conclusion. The mother has a long history of substance abuse, including methamphetamine. While she has participated in treatment during these proceedings, she has continued to relapse and test positive for the substance. Outside of her time in residential treatment, the mother had no significant periods of sobriety during this case, even after she learned she was pregnant with her second child. The mother's continued use presents an ongoing

risk of adjudicatory harm and amounts to clear and convincing evidence that the child cannot be returned to her care at present.  *See In re K.S.*, No. 21-1755, 2022 WL 951034, at *1 (Iowa Ct. App. Mar. 30, 2022) (collecting cases).  We agree the State met its burden for termination under section 232.116(1)(h).[3]

### B.      Best Interests

To the extent that the mother argues termination is contrary to the child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  The defining elements of a child's best interests are safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

This child has been removed from parental care for roughly a year.  During that time, the mother has continued to use methamphetamine despite two stints at inpatient treatment.  Rather than moving to a sober living house, she chose to remain homeless with her boyfriend.  She has been unemployed since 2017 with no concrete plans for that to change in the future.  Though she consistently participated in visits, she never progressed beyond fully supervised visitation.  And even then, providers were concerned about her ability to care for the child for more than two hours at a time.  She has been unable to provide stability and permanency for herself, let alone her child.  Though the child has been in his current pre-

---

[3] In her petition on appeal, the mother refers to evidence that she has "given birth to another child who remains in her care and custody," which she contends "contravene[s] any assertion that the child in interest in this action could not be returned to [her] care."  This evidence is not in the record before us because at the time of the termination hearing, the mother was still pregnant with her second child.  We will not speculate about what has occurred since.

adoptive foster home for a short time, he has a good relationship with his foster parents; he is integrated into the home; and the placement has continued to foster his growth, condition, and needs. *See* Iowa Code § 232.116(2)(b). We agree with the district court that termination is in the child's best interests.

### C.      Statutory Exception

Throughout her petition on appeal, the mother often highlights the bond between herself and the child. We interpret this as a request for application of the statutory exception to termination in Iowa Code section 232.116(3)(c), which grants the juvenile court discretion to forgo termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

We first note the application of a statutory exception to termination, if an exception exists, is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *A.M.*, 843 N.W.2d at 113). While we acknowledge a bond between the mother and child, we conclude she failed to show "that the termination would be detrimental to the child . . . due to the closeness of the parent-child relationship," especially given the child's young age. *See* Iowa Code § 232.116(3)(c); *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception to termination . . . ."). The mother presented no evidence the child would suffer physical, mental, or emotional detriment if her rights were terminated. As a result, we conclude this exception to termination does not apply.

**D.    Additional Time**

The mother's primary argument appears to be her request for a deferral of permanency to allow her to continue to work toward reunification.  *See* Iowa Code §§ 232.117(5) (stating that if the juvenile court does not terminate parental rights, it may enter an order under section 232.104(2)(b)), .104(2)(b) (allowing the juvenile court to continue placement of a child for an additional six months).  A six-month extension is appropriate if the parent can establish that "the need for removal . . . will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b); *accord In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021).

The only change the mother testified would occur if given more time was rectification of her housing instability.  *See* Iowa Code § 232.104(2)(b) (requiring enumeration of "the specific factors, conditions, or expected behavioral changes" showing the need for removal will no longer exist at the end of the period).  But she has been unable to accomplish continuous housing stability despite a year of services and treatment.  And the mother's housing instability is not the only circumstance needing rectification before removal could cease.  Given the mother's track record, we cannot agree that giving her more time would lead to a different result.  *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct.").  We conclude additional time is not warranted in this case.

**III.    Conclusion**

We affirm the termination of the mother's parental rights.

**AFFIRMED.**